GORLICK, KRAVITZ & LISTHAUS, P.C.
Bruce L. Listhaus (BL2381)
Joy K. Mele (JM0207)
17 State Street, 4th Floor
New York, New York 10004
blisthaus@gkllaw.com
jmele@gkllaw.com
Tel. (212) 269-2500
Fax (212) 269-2540
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
CEMENT AND CONCRETE WORKERS
DISTRICT COUNCIL WELFARE FUND;
CEMENT AND CONCRETE WORKERS
DISTRICT COUNCIL PENSION FUND;
CEMENT AND CONCRETE WORKERS           :   **AMENDED**
DISTRICT COUNCIL ANNUITY FUND; CEMENT  :  **COMPLAINT**
AND CONCRETE WORKERS TRAINING AND
APPRENTICESHIP FUND; CEMENT AND
CONCRETE WORKERS DISTRICT COUNCIL
SCHOLARSHIP FUND; CEMENT AND
CONCRETE WORKERS DISTRICT COUNCIL
LABOR/MANAGEMENT COOPERATIVE
TRUST FUND, and ABBY KAPLAN, in her
fiduciary capacity as ASSISTANT FUND
ADMINISTRATOR;

                    Plaintiffs,

- against -

IDEAL INTERIORS GROUP, LLC,

                    Defendants.
------------------------------------------------------------X

    Plaintiffs Cement and Concrete Workers District Council Welfare Fund; Cement and Concrete Workers District Council Pension Fund; Cement and Concrete Workers District Council Annuity Fund; Cement and Concrete Workers Training and Apprenticeship Fund; Cement and Concrete Workers District Council Scholarship Fund; Cement and Concrete

Workers District Council Labor/Management Cooperative Trust Fund (the "Funds"); and Abby Kaplan, in her fiduciary capacity as Assistant Fund Administrator ("Kaplan") (collectively "Plaintiffs"), by and through their attorneys, Gorlick, Kravitz & Listhaus, P.C., as and for their Amended Complaint, respectfully allege as follows:

### NATURE OF THE ACTION AND JURISDICTION

1. This is a civil action brought pursuant to, *inter alia*, §§ 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), as amended (29 U.S.C. §§ 1132(a)(3) and 1145), and § 301 of the Labor Management Relations Act of 1947 (29 U.S.C. § 185) (the "Taft-Hartley Act"), by Plaintiffs for breach of contract, injunctive relief, and other legal and equitable relief under ERISA.

2. This Amended Complaint alleges, *inter alia*, that by failing, refusing, or neglecting to comply with specific statutory and contractual obligations, Defendant Ideal Interiors Group LLC ("Ideal") violated one or more contracts between an employer and a labor organization, as defined under the Taft-Hartley Act, the Funds' respective trust agreements, and ERISA.

3. Jurisdiction of this Court is invoked under the following statutes:

    a. ERISA § 502(e)(1) and (f) (29 U.S.C. § 1132(e)(1) and (f));

    b. Taft-Hartley Act § 301 (29 U.S.C. § 185);

    c. 28 U.S.C. § 1331 (federal question);

    d. 28 U.S.C. § 1337 (civil actions arising under Act of Congress regulating commerce); and

    e. 28 U.S.C. § 1367 (supplemental jurisdiction).

4. Venue properly lies in this district under ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)) and Taft-Hartley Act § 301 (29 U.S.C. § 185(c)) because the Funds are administered

in this district, the contractual breaches took place in this district and Ideal resides and/or may be found in this district. Service of process may be made on Ideal in any other district in which it may be found pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)).

## PARTIES

5.  The Funds are jointly-administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements in accordance with Taft-Hartley Act §§ 302(c)(5) and (c)(6) (29 U.S.C. § 186(c)(5) and (c)(6)). The Funds also are employee benefit plans within the meaning of ERISA §§ 3(1), 3(2), 3(3) and 502(d)(1) (29 U.S.C. §§ 1002(1)-(3), and 1132(d)(1)), and multi-employer plans within the meaning of ERISA §§ 3(37) and 515 (29 U.S.C. §§ 1002(37) and 1145). The Funds are authorized to maintain suits as independent legal entities under ERISA § 502(d)(1) (29 U.S.C. § 1132(d)(1)). The Funds provide fringe benefits to eligible employees on whose behalf employers in the construction industry contribute to the Funds pursuant to collective bargaining agreements between such employers and the Cement and Concrete Workers District Council ("Union"). The Funds are third-party beneficiaries to such collective bargaining agreements as collectors and trustees of employer contributions made pursuant to these collective bargaining agreements. The Funds maintain their offices and are administered at 35-30 Francis Lewis Blvd., Suite 201, Flushing, NY 11358.

6.  The Funds are also the duly authorized collection agent for the Union and the Cement League Industry Advancement Program ("CLIAP"), the New York State Laborers-Employers Corporation and Education Trust ("NYSLECET"), the Laborers National Health and Safety Fund ("LNHFS"), the New York State Laborers' Political Action Committee ("NYSLPAC"), and the New York State Laborers' Organizing Fund ("NYSLOF").

7.  Plaintiff Abby Kaplan is the Funds' Assistant Fund Administrator and is a fiduciary

of the Funds within the meaning of Taft-Hartley Act § 301 (29 U.S.C. § 185) and represents employees in an industry affecting commerce as defined by Taft-Hartley Act § 501 (29 U.S.C. § 142) and ERISA § 3(4) (29 U.S.C. § 1002(4)).

8. Defendant Ideal is a for-profit domestic limited liability company doing business in the state of New York as an employer within the meaning of ERISA §§ 3(5) and 515 (29 U.S.C. §§ 1002(5) and 1145), and is an employer in an industry affecting commerce within the meaning of Taft-Hartley Act § 301 (29 U.S.C. § 185). Upon information and belief, Ideal's principal office is located at 450 Seventh Avenue, New York, NY 10123.

## BACKGROUND FACTS

9. By agreements dated March 3, 2016 and June 2, 2016, Ideal entered into a collective bargaining agreement with the Union (the "Agreement"), effective March 3, 2016 through June 30, 2020, concerning work performed by Ideal employees at the job site located at Bronx Community College, 2155 University Drive.

10. Among other things, the Agreement requires Ideal to: (i) submit to the Funds reports detailing the number of hours that Ideal employees performed work within the trade and geographic jurisdictions of the Union ("Covered Work"); (ii) make fringe benefit contributions to the Funds based on the number of hours of Covered Work its employees perform; (iii) make CLIAP, NYSLECET, and LNHFS contributions to the Funds based on the number of hours of Covered Work its employees perform; (iv) deduct checkoffs and NYSLPAC contributions from the wages of employees who performed Covered Work and authorized such deductions in writing; (v) remit all deducted checkoffs, NYSLOF and NYSLPAC contributions to the Union; (vi) permit the Funds and/or their designated representatives to audit Ideal's books and records; and (vii) apply interest and other fees and costs on delinquent fringe benefit contributions.

11.     The Funds' performed an audit of Ideal's books and records ("First Audit") for the period of March 3, 2016 through April 30, 2017 ("First Audit Period"). The First Audit revealed there were 2,770.50 hours of Covered Work performed by Ideal employees during the First Audit Period for which Ideal failed to comply with their obligations under the Agreement to make fringe benefit contributions, CLIAP, NYSLECET, and LNHFS contributions, and remit deducted checkoffs, NYSLOF and NYSLPAC contributions.

12.     By correspondence, dated May 23, 2018, the Funds demanded full and immediate payment of all unpaid amounts revealed through the First Audit.

13.     To date, Ideal has not paid the amounts due in the First Audit.

14.     The Funds' performed a second audit of Ideal's books and records ("Second Audit") for the period of May 1, 2017 through May 10, 2018 ("Second Audit Period"). The Second Audit revealed there were 7,123 hours of Covered Work performed by Ideal employees during the Second Audit Period for which Ideal failed to comply with their obligations under the Agreement to make fringe benefit contributions, CLIAP, NYSLECET, and LNHFS contributions, and remit deducted checkoffs, NYSLOF and NYSLPAC contributions.

15.     By correspondence, dated June 15, 2018, the Funds demanded full and immediate payment of all unpaid amounts revealed through the Second Audit.

16.     To date, Ideal has not paid the amounts due in the Second Audit.

17.     Upon information and belief, Ideal continued to perform Covered Work after the First and Second Audit Periods, and continues to perform Covered Work.

**AS AND FOR A FIRST CLAIM FOR RELIEF**
**(CLAIM FOR BREACH OF CONTRACT FOR DELINQUENT FRINGE BENEFIT, CLIAP, NYSLECET, AND LNHFS CONTRIBUTIONS DURING THE FIRST AND SECOND AUDIT PERIODS)**

18.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1

through 17 of this Amended Complaint, as if fully set forth herein.

19.     Pursuant to the Agreement, Ideal must make fringe benefit, CLIAP, NYSLECET, and LNHFS contributions to the Funds for each hour of Covered Work performed by Ideal employees as set forth in Article XI of the Agreement.

20.     Ideal failed to make contractually mandated fringe benefit, CLIAP, NYSLECET, and LNHFS contributions for 2,770.50 hours of Covered Work performed by its individual employees during the First Audit Period, resulting in principal fringe benefits, CLIAP, NYSLECET, and LNHFS contributions delinquency of $70,437.08.

21.     Ideal failed to make contractually mandated fringe benefit, CLIAP, NYSLECET and LNHFS contributions for 7,123 hours of Covered Work performed by its individual employees during the Second Audit Period, resulting in principal fringe benefits, CLIAP, NYSLECET, and LNHFS contributions delinquency of $182,479.98.

22.     Ideal's failure to make required contributions to the Funds during the First and Second Audit Periods is a breach of the Agreement.

23.     Article XI § 11(f) of the Agreement requires employers found delinquent in their payment of contributions to the Funds to pay interest on the unpaid amounts at the rate of eighteen percent (18%) per annum.

24.     Article XI § 11(f) requires employers delinquent in their payment of contributions to the Funds to pay all costs, including but not limited to reasonable audit and accounting expenses, witness costs, attorneys' fees and court costs.

25.     Article XI § 11(f) of the Agreement provides that in the event that formal proceedings to recover unpaid contributions are instituted and the Court renders judgment for the Funds, Ideal must pay to the Funds: (i) the unpaid contributions; (ii) interest on the unpaid

contributions; (iii) liquidated damages; and (iv) the Funds' costs and attorneys' fees.

26. Article XI § 11(f) of the Agreement requires employers delinquent in their payment of contributions to the Funds to pay liquidated damages on the unpaid amounts at the rate of twenty percent (20%).

27. Accordingly, Ideal is liable to the Funds for failing to make required fringe benefit, CLIAP, NYSLECET, and LNHFS contributions for Covered Work performed by Ideal employees during the First Audit Period in the principal amount of $70,437.08, and during the Second Audit Period in the principal amount of $182,479.98, plus interest, liquidated damages, and all costs, including but not limited to reasonable audit and accounting expenses, witness costs, attorneys' fees and court costs, and all other contractual damages.

### AS AND FOR A SECOND CLAIM FOR RELIEF
### (CLAIM FOR BREACH OF ERISA OBLIGATIONS)

28. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 27 of this Amended Complaint, as if fully set forth herein.

29. ERISA § 515 (29 U.S.C. § 1145) requires employers to make contributions in accordance with the terms and conditions of collective bargaining agreements.

30. Ideal is an employer under ERISA and is bound by the Agreement.

31. During the First and Second Audit Periods, Ideal failed to make contributions to the Funds required under the Agreement. Failure to make such payments violates ERISA § 515 (29 U.S.C. § 1145).

32. Once it is found that an employer has violated ERISA § 515 (29 U.S.C. § 1145), the Court is required by ERISA 502(g)(2) (29 U.S.C. § 1132(g)(2)) to award the Funds: (i) the unpaid contributions; (ii) interest on the unpaid contributions; (iii) an amount equal to the greater of interest on the unpaid contributions, or liquidated damages provided for under the Funds' plan;

(iv) reasonable attorneys' fees and costs of the action to be paid by defendants; and (v) such other legal and equitable relief as the court deems appropriate. Interest on unpaid contributions shall be determined by using the rate provided under the Funds' plan, or, if none, the rate prescribed under Section 6621 of Title 26 of the United States Code.

33. Article XI § 11(f) of the Agreement provides for interest on delinquent contributions at a rate of eighteen percent (18%) per annum.

34. Article XI § 11(f) provides for liquidated damages at the rate of twenty percent (20%).

35. Accordingly, Ideal is liable to the Funds for failing to make required contributions for Covered Work performed by Ideal employees during the First Audit Period in the principal amount of $70,437.08, and during the Second Audit Period in the principal amount of $182,479.98, plus statutory damages, including interest, liquidated damages, Plaintiffs' attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate pursuant to § 502(g)(2) of ERISA (29 U.S.C. § 1132) and the Agreement.

### AS AND FOR A THIRD CLAIM FOR RELIEF
### (CLAIM FOR BREACH OF CONTRACT FOR FAILURE TO REMIT CHECKOFFS AND NYSLPAC CONTRIBUTIONS)

36. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 35 of this Amended Complaint, as if fully set forth herein.

37. Article X §§ 1 and 2 of the Agreement requires Ideal to deduct and remit to the Funds dues checkoffs and NYSLPAC contributions withheld from the wages of employees who perform Covered Work and who authorized such deductions.

38. Article X § 1(a) of the Agreement requires Ideal to deduct NYSLOF and organizer checkoffs from the wages paid to its employees who perform Covered Work within the trade

jurisdictions of the Union and to remit those deductions to the Union.

39. During the First Audit Period, Ideal failed to deduct and/or remit $8,172.98 from the wages of its employees who performed Covered Work and who authorized deductions of dues and organizer checkoffs and NYSLOF and NYSLPAC contributions from their wages.

40. During the Second Audit Period, Ideal failed to deduct and/or remit $21,012.85 from the wages of its employees who performed Covered Work and who authorized deductions of dues and organizer checkoffs and NYSLOF and NYSLPAC contributions from their wages.

41. The Funds, as the duly authorized agent for the UNION, NYSLOF, and NYSLPAC, have duly demanded the checkoffs, NYSLOF and NYSLPAC contributions due and owing from Ideal for the First and Second Audit Periods.

42. Ideal's failure to deduct and/or remit the checkoffs and NYSLPAC contributions for the First and Second Audit Periods is a breach of the Agreement.

43. Article XI § 11(f) of the Agreement requires employers found delinquent in their payment of contributions and checkoffs to the Funds to pay interest on the unpaid amounts at the rate of eighteen percent (18%) per annum.

44. Article XI § 11(f) of the Agreement requires employers delinquent in their payment of contributions and checkoffs to the Funds to pay all costs, including but not limited to reasonable audit and accounting expenses, witness costs, attorneys' fees and court costs.

45. Article XI § 11(f) of the Agreement provides that in the event that formal proceedings to recover unpaid contributions and checkoffs are instituted and the Court renders judgment for the Funds, Ideal must pay to the Funds: (i) the unpaid contributions and checkoffs; (ii) interest on the unpaid contributions and checkoffs; (iii) liquidated damages; and (iv) the Funds' costs and attorneys' fees.

46. Article XI § 11(f) of the Agreement requires employers delinquent in their payment of contributions and checkoffs to the Funds to pay liquidated damages on the unpaid amounts at the rate of twenty percent (20%).

47. Accordingly, Ideal is liable to the Funds for undeducted and/or unremitted dues and Organizer Fund checkoffs and NYSLPAC contributions during the First Audit Period in the principal amount of $8,172.98, and during the Second Audit Period in the principal amount $21,012.85, plus interest, liquidated damages, and all costs, including but not limited to reasonable audit and accounting expenses, witness costs, attorneys' fees and court costs, and all other contractual damages.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
### (BREACH OF CONTRACT CLAIM FOR AUDIT COSTS)

48. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 47 of this Amended Complaint, as if fully set forth herein.

49. Article XI § 11(f) of the Agreement requires employers delinquent in their payment of contributions and checkoffs to the Funds to pay all costs, including but not limited to reasonable audit and accounting expenses.

50. Article XI § 11(j) of the Agreement provides that any employer who is found upon an audit to be substantially delinquent, may be charged the full cost of such audit.

51. During the First Audit Period, Ideal failed to make contractually mandated fringe benefit, CLIAP, NYSLECET, and LNHFS contributions for 2,770.50 hours of Covered Work performed by its individual employees during the First Audit Period, resulting in principal fringe benefits, CLIAP, NYSLECET, and LNHFS contributions delinquency of $70,437.08.

52. During the First Audit Period, Ideal failed to deduct and/or remit $8,172.98 from the wages of its employees who performed Covered Work and who authorized deductions of dues

and organizer checkoffs, NYSLOF and NYSLPAC contributions from their wages.

53. During the Second Audit Period, Ideal failed to make contractually mandated fringe benefit, CLIAP, NYSLECET, and LNHFS contributions for 7,123 hours of Covered Work performed by its individual employees during the Second Audit Period, resulting in principal fringe benefits, CLIAP, NYSLECET, and LNHFS contributions delinquency of $182,479.98.

54. During the Second Audit Period, Ideal failed to deduct and/or remit $21,012.85 from the wages of its employees who performed Covered Work and who authorized deductions of dues and organizer checkoffs, NYSLOF and NYSLPAC contributions from their wages.

55. Accordingly, Ideal is liable under the Agreement to pay to the Funds the audit costs.

## AS AND FOR A FIFTH CLAIM FOR RELIEF
### (CLAIM FOR BREACH OF CONTRACT FOR FAILING TO POST A BOND)

56. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 55 of this Amended Complaint, as if fully set forth herein.

57. Pursuant to Article XI § 9(a) of the Agreement, Ideal is required, *inter alia*, to post a surety bond to ensure payment of contributions that become due and owing to the Funds. Article XI § 9(a) provides in relevant part:

> Each Employer shall post a surety bond to insure payment of contributions to the C&CWDC Fringe Benefit Funds as follows:
>
> | *Number of Members Of Bargaining Unit* | *Amount of Bond* |
> |---|---|
> | Employers employing up to and including fifteen (15) Employees | $50,000.00 |
> | Employers employing over Fifteen (15) Employees | $75,000.00 |
>
> In lieu of a bond or as a supplement to the bond, an Employer may furnish a cash alternative in the amount of the bond required herein in full satisfaction of this bonding required.

11

58.     Upon information and belief, Ideal has not posted a bond or provided the Funds with a cash alternative.

59.     Upon information and belief, Ideal employs over fifteen (15) employees.

60.     The failure, refusal or neglect of Ideal to post the required bond or cash alternative is a breach of the Agreement.

61.     Accordingly, pursuant to Article XI § 9(a) of the Agreement, Ideal is required to post a bond or furnish a cash alternative in the amount of the bond.

## AS AND FOR A SIXTH CLAIM FOR RELIEF
### (DEMAND FOR AN ORDER DIRECTING IDEAL TO PERMIT AN AUDIT OF IDEAL'S BOOKS AND RECORDS)

62.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 61 of this Amended Complaint, as if fully set forth herein.

63.     Pursuant to Article XI § 11(a) of the Agreement, Ideal is required, *inter alia*, to permit and cooperate with the Funds and/or their designated representative in the conduct of audits of Ideal's books and records, which include, without limitation:

> [A]ll payrolls and patrol ledgers including office payrolls, yard payrolls, New York payrolls, New Jersey payrolls, computer payroll printouts, W-2 forms, quarterly payroll tax returns (Form 941), quarterly state payroll tax returns (Form NYS 45), annual and federal state tax returns, journals, purchase journals, New York State employment records, insurance company reports, employer remittance reports, payroll and supporting checks, ledgers, expense vouchers, 1099 forms, cash disbursements, check register, evidence of unemployment insurance contributions, payroll tax deductions, disability insurance premiums, certification of workers compensation coverage, check in support of any governmental filings or tax payments, remittance reports and checks in support thereof and any other documentation concerning payment of fringe benefit contributions.

64.     Accordingly, pursuant to the terms and conditions of the Agreement, the Funds demand an Order directing Ideal to permit and cooperate with the Funds and /or their designated representative in the conduct of an audit of Ideal's books and records for the period of May 11,

2018 through the present ("Third Audit").

### AS AND FOR A SEVENTH CLAIM FOR RELIEF
### (CLAIM FOR FRINGE BENEFIT, CLIAP, NYSLECET, AND LNHSF CONTRIBUTIONS, CHECKOFFS, NYSLOF AND NYSLPAC CONTRIBUTIONS, AUDIT COSTS, AND OTHER STATUTORY AND CONTRACTUAL DAMAGES FOUND DUE AND OWING PURSUANT TO THE THIRD AUDIT)

65. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 64 of this Amended Complaint, as if fully set forth herein.

66. The Agreement requires Ideal to pay fringe benefit, CLIAP, NYSLECET, and LNHSF contributions, checkoffs, NYSLOF and NYSLPAC contributions found due and owing pursuant to the Third Audit.

67. Accordingly, Ideal is liable to the Funds for all unpaid fringe benefit, CLIAP, NYSLECET, and LNHSF contributions, checkoffs, NYSLOF and NYSLPAC contributions found due and owing pursuant to the Third Audit, plus all statutory and contractual damages, including interest, liquidated damages, reasonable audit and accounting expenses, audit costs, witness costs, attorneys' fees and court costs, all other contractual damages, and such other legal and equitable relief as the Court deems appropriate pursuant to § 502(g)(2) of ERISA (29 U.S.C. § 1132) and the Agreement.

### AS AND FOR AN EIGHTH CLAIM FOR RELIEF
### (CLAIM FOR INJUNCTIVE RELIEF)

68. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 67 of this Amended Complaint, as if fully set forth herein.

69. Pursuant to the Agreement, Ideal is required to timely pay, submit and/or remit fringe benefit, CLIAP, NYSLECET, and LNHSF contributions, checkoffs, NYSLOF and NYSLPAC contributions and/or reports to the Funds, and permit and cooperate in the conduct of

audits of Ideal's books and records for so long as it remains obligated to do so pursuant to the Agreement.

70. Article XI § 11(g) of the Agreement provides that "[w]here payment is made or an audit is conducted pursuant to a judgment or court order, the Employer recognizes the right of the . . . Funds to have the court enter an order permanently enjoining the Employer . . . for the remaining term of the Agreement from failing, refusing or neglecting to submit the required employer remittance reports and/or pay the required contributions to the . . . Funds and requiring the Employer to cooperate in an audit in accordance with the provisions of this Agreement."

71. Ideal has failed to timely pay, submit, and/or remit fringe benefit, CLIAP, NYSLECET, and LNHSF contributions, checkoffs, NYSLOF and NYSLPAC contributions to the Funds, and are currently in breach of their obligations under the Agreement. Their prior conduct demonstrates a significant likelihood that they will continue to breach the terms of the Agreement.

72. The Funds have no adequate remedy at law to ensure that Ideal will adhere to the terms of the Agreement.

73. The Funds will suffer immediate and irreparable injury unless Ideal, its officers, agents, servants and employees are enjoined from failing, refusing or neglecting to pay and/or submit to the Funds the required monetary contributions, checkoffs, NYSLOF and NYSLPAC contributions, and permit and cooperate in the conduct of audits for so long as they remain obligated to do so pursuant to the Agreement.

74. Accordingly, the Funds request that this Court issue an injunction permanently enjoining Ideal, its agents, representatives, directors, officers, stockholders, employees, successors and assigns and all persons in active concert or participation with it who receive actual notice of the order by personal service or otherwise, from failing, refusing or neglecting to pay and/or submit

to the Funds the required monetary contributions, checkoffs, NYSLOF and NYSLPAC contributions, and permit and cooperate in the conduct of audits for so long as they remain obligated to do so pursuant to the Agreement.

### AS AND FOR A NINTH CLAIM FOR RELIEF
### (CLAIM FOR INJUNCTIVE RELIEF PURSUANT TO ERISA)

75. Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 74 of this Amended Complaint, as if fully set forth herein.

76. Pursuant to the Agreement, Ideal is required to timely pay, submit and/or remit fringe benefit, CLIAP, NYSLECET, and LNHSF contributions, checkoffs, NYSLOF and NYSLPAC contributions and/or reports to the Funds, and permit and cooperate in the conduct of audits of Ideal's books and records for so long as it remains obligated to do so pursuant to the Agreement.

77. Article XI § 11(g) of the Agreement provides that "[w]here payment is made or an audit is conducted pursuant to a judgment or court order, the Employer recognizes the right of the . . . Funds to have the court enter an order permanently enjoining the Employer . . . for the remaining term of the Agreement from failing, refusing or neglecting to submit the required employer remittance reports and/or pay the required contributions to the . . . Funds and requiring the Employer to cooperate in an audit in accordance with the provisions of this Agreement."

78. Ideal has failed to timely pay, submit, and/or remit fringe benefit, CLIAP, NYSLECET, and LNHSF contributions, checkoffs, NYSLOF and NYSLPAC contributions to the Funds, and are currently in breach of their obligations under ERISA. Their prior conduct demonstrates a significant likelihood that they will continue to breach ERISA.

79. The Plaintiffs have no adequate remedy at law to ensure that Ideal will continue to adhere to its statutory obligations.

80.     The Funds will suffer immediate and irreparable injury unless Ideal, its officers, agents, servants and employees are enjoined from failing, refusing or neglecting to pay and/or submit to the Funds the required monetary contributions, checkoffs, NYSLOF and NYSLPAC contributions, and permit and cooperate in the conduct of audits for so long as they remain obligated to do so pursuant to ERISA.

81.     Accordingly, the Funds request that this Court issue an injunction permanently enjoining Ideal, its agents, representatives, directors, officers, stockholders, employees, successors and assigns and all persons in active concert or participation with it who receive actual notice of the order by personal service or otherwise, from failing, refusing or neglecting to pay and/or submit to the Funds the required monetary contributions, checkoffs, NYSLOF and NYSLPAC contributions, and permit and cooperate in the conduct of audits for so long as they remain obligated to do so pursuant to ERISA.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment against Ideal:

a) for payment of delinquent fringe benefit, CLIAP, NYSLECET, and LNHSF contributions in the principal amount of $70,437.08 for the time period of March 3, 2016 through April 30, 2017;

b) for payment of delinquent fringe benefit, CLIAP, NYSLECET, and LNHSF contributions in the principal amount of $182,479.98 for the time period of May 1, 2017 through May 10, 2018;

c) for payment of all required checkoffs, NYSLOF and NYSLPAC contributions in the amount of $8,172.98 for the time period of March 3, 2016 through April 30, 2017;

d) for payment of all required checkoffs, NYSLOF and NYSLPAC contributions in the

amount of $21,012.85 for the time period of May 1, 2017 through May 10, 2018;

e) for interest on delinquent fringe benefit, CLIAP, NYSLECET, and LNHSF contributions, checkoffs, NYSLOF and NYSLPAC contributions from the time such contributions were due at the rate of 18% per annum;

f) for liquidated damages on the delinquent fringe benefit, CLIAP, NYSLECET, and LNHSF contributions, checkoffs, NYSLOF and NYSLPAC contributions at the rate of 20%;

g) for all ERISA damages pursuant to 29 U.S.C. § 1132(g);

h) for all reasonable audit and accounting expenses;

i) for all audit costs;

j) for all witness costs;

k) for Plaintiffs' costs and attorneys' fees;

l) for an Order requiring Ideal to post a bond or provide a cash alternative;

m) for an Order requiring Ideal to cooperate with the Funds in the Third Audit of Ideal's books and records for the time period of May 11, 2018 through the present;

n) for an Order requiring payment of all fringe benefit, CLIAP, NYSLECET, and LNHSF contributions, checkoffs, NYSLOF and NYSLPAC contribution, and all statutory and contractual damages found due and owing pursuant to the Third Audit for the period of May 11, 2018 through the present;

o) for an Order permanently enjoining Ideal, its agents, representatives, directors, officers, stockholders, employees, successors and assigns and all persons in active concert or participation with them who receive actual notice of the Order, by personal service or otherwise, for so long as they remain obligated to contribute to the Funds

and the Union, from failing, refusing or neglecting to pay and/or submit to the Funds the required monetary contributions, checkoffs, NYSLOF and NYSLPAC contributions, and permit and cooperate in the conduct of audits for so long as they remain obligated to do so pursuant to the Agreement;

p) for an Order permanently enjoining Ideal, its agents, representatives, directors, officers, stockholders, employees, successors and assigns and all persons in active concert or participation with it who receive actual notice of the order by personal service or otherwise, from failing, refusing or neglecting to pay and/or submit to the Funds the required monetary contributions, checkoffs, NYSLOF and NYSLPAC contributions, and permit and cooperate in the conduct of audits for so long as they remain obligated to do so pursuant to ERISA; and

q) for such other and further relief as the Court deems just and proper.

Dated: New York, New York
June 27, 2018

GORLICK, KRAVITZ & LISTHAUS, P.C.
*Attorneys for Plaintiffs*

By: _____
Bruce L. Listhaus (BL2381)
Joy K. Mele (JM 0207)
17 State Street, 4th Floor
New York, New York 10004
blisthause@gkllaw.com
jmele@gkllaw.com
Tel. (212) 269-2500
Fax. (212) 269-2540
